IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROBERT WILLIAMS**                                                             **PLAINTIFF**

**V.**                                            **NO. 4:22-CV-79-DMB-DAS**

**ALLSTATE INDEMNITY COMPANY**                              **DEFENDANT**

**ORDER**

Robert Williams sued Allstate Indemnity Company after Allstate denied his insurance claim for fire damage to his rental property. Allstate moves for summary judgment on Williams' remaining claims for breach of contract and bath faith. Because Williams has not shown his rental property was occupied ninety days prior to the fire, summary judgment will be granted.

**I**
**Procedural History**

On March 7, 2022, Robert Williams filed a complaint in the Circuit Court of Leflore County, Mississippi, against Allstate Indemnity Company, alleging claims for breach of contract, bad faith breach of contract, and negligent infliction of emotional distress following Allstate's denial of his fire damage claim.[1] Doc. #2 at PageID 19, 24–26. Asserting diversity jurisdiction, Allstate removed the case to the United States District Court for the Northern District of Mississippi on May 26, 2022. Doc. #1.

One week later, Allstate moved to dismiss the bad faith and negligent infliction of emotional distress claims. Doc. #3. On November 28, 2022, the Court granted the motion to the extent it sought dismissal of the negligent infliction of emotional distress claim and permitted

---

[1] Williams "prays for … tortious economic and non-economic damages, past, present and future emotional and physical pain and suffering, past, present and future medical bills, contractual and extra-contractual damages, Veasley damages, punitive or exemplary damages, and/or other economic losses … together with pre-judgment and post-judgment interest, with all attorneys' fees and costs …." Doc. #2 at PageID 26.

Williams fourteen days to seek leave to amend his complaint. Doc. #16 at 8. When Williams did not seek leave to amend, the Court dismissed with prejudice his negligent infliction of emotional distress claim. Doc. #19.

On October 11, 2023, Allstate filed a motion for summary judgment or, alternatively, partial summary judgment. Doc. #48. The motion is fully briefed.[2] Docs. #49, #55,[3] #62.

**II**
**Standard**

A court may enter summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Id.* (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (alteration and internal quotation marks omitted). "[S]ummary judgment is appropriate unless a plaintiff can produce *significant evidence* demonstrating the existence of a genuine fact issue." *Johnson v. Diversicare Afton Oaks LLC*, 597 F.3d 673, 676 (5th Cir. 2010)

---

[2] Both parties requested and received two extensions. Docs. #53, #56, #58, #60.

[3] In violation of Local Rule 7(b)(5), Williams did not separately file a response and memorandum brief—he filed one document consisting of both. Doc. #55.

(cleaned up) (emphasis in original). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020).

### III
### Factual Background

In 2009, Robert Williams allowed Maria Purnell's three daughters—Erika, Brianna, and Shakevia—to live in a house on his property at 602 Henderson Street in Greenwood, Mississippi ("Property"). Doc. #48-2 at 51–52; Doc. #48-5 at 15–16. They agreed the daughters would move out after the youngest daughter Shakevia graduated high school. Doc. #48-2 at 52. According to all three Purnell daughters, they were no longer living in the house by the time Shakevia graduated high school in May of 2019.[4] Doc. #48-7 at 42; Doc. #48-8 at 12; Doc. #48-6 at 26.

Sometime in 2019, Allstate issued Williams a "Renewal Landlords Package Policy" ("Policy") on the Property with an effective term of June 6, 2019, through June 6, 2020. Doc. #48-1 at PageID 678. The Policy provides in relevant part:

> **We** do not cover loss to the property … consisting of or caused by:
>
> …
>
> **Vandalism**. However, **we** do cover sudden and accidental direct physical loss caused by fire resulting from **vandalism** unless **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.
>
> …
>
> **We** will cover sudden and accidental direct physical loss [for personal property], … except as limited or excluded in this policy, caused by:
>
> Fire or lightning.

---

[4] Erika testified she moved out of the house in March of 2018 and began renting her own apartment. Doc. #48-7 at 12. Brianna testified she moved in with her sister Erika when Erika started renting the apartment. Doc. #48-8 at 12. Shakevia testified she moved out of the Property in the fall of 2018 to live with Erika at her new apartment. Doc. #48-6 at PageID 26.

> However, **we** do not cover loss caused by fire resulting from **vandalism** if **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

*Id.* at PageID 693, 695, 697 (paragraph lettering and numbering omitted).

On August 30, 2019, a fire occurred at the Property which Williams reported to Allstate the same day as a claim. Doc. #2 at PageID 21; Doc. #5 at 2. On September 23, 2019, Rick Eley, a certified fire investigator retained by Allstate, concluded:

> All physical evidence available at the time of [his] inspection indicates this fire should be classified as Incendiary, occurring as the result of someone pouring, placing or in some other manner applying an ignitable liquid on clothing, bags of paper and trash in the dining room of the home and intentionally igniting those materials.

Doc. #48-3 at PageID 819, 823. Eley based his decision on the following physical evidence:

1. The fire definitely originated in the dining room at the back of the house and this was determined by conducting a comparative analysis of damage of all the rooms in the structure and finding this to be the most severely burned.

2. The ceiling and roof above that room were consumed by the fire while there was very little fire spread into rest of the house. This indicates that this was an accelerated fire.

3. [He] found a red plastic gasoline container in the middle of the dining room floor that still had a strong odor of gasoline.

4. Digging down into the debris [he] found that the clothing and the bags and garbage had been saturated with this gasoline and ignited.

5. Laboratory analysis of the debris indicated that it tested positive for the presence of evaporated gasoline therefore this identifies the ignitable liquid used to intentionally burn this home.

6. The lack of any other identifiable competent ignition source for this fire.

*Id.* at PageID 823–24 (emphasis and page header omitted).

On October 2, 2019, Williams "received a letter from Allstate reserving [its] right to later deny coverage … because the home may have been vacant or unoccupied for more than ninety

(90) days prior to the loss." Doc. #2 at PageID 21 (emphasis omitted); Doc. #5 at 2. Approximately one month later, on November 6, 2019, Allstate attorney Robert R. Stephenson wrote attorney Frank Shawn[5] advising that he had "been retained by Allstate … to obtain an examination under oath from Robert Williams and request that he produce certain documents so that Allstate may further process and evaluate the … claim." Doc. #2-2 at PageID 28; Doc. #2 at PageID 21; Doc. #5 at 2. Stephenson and Williams' attorney James K. Littleton examined Williams under oath on June 25, 2020. Doc. #2 at PageID 21; Doc. #5 at 2; Doc. #48-5 at 1–3.

On August 26, 2020, Allstate denied Williams' fire claim because it determined the fire was the result of vandalism and the "rental unit was not occupied by a tenant when the loss occurred, and there was not a signed, written rental agreement at the time of the loss." Doc. #48-4 at PageID 827–28.

## IV
## Analysis

With respect to Williams' remaining claims for breach of contract and bad faith breach of contract, Allstate argues this "action should be dismissed with prejudice because the fire was willfully started, and the house had been unoccupied for more than 90 days before the fire" or "in the alternative, only, [the] count for bad faith should be dismissed." Doc. #49 at PageID 1093, 1100. Williams responds that (1) Allstate cannot show the home was unoccupied for 90 consecutive days; (2) "the terms 'vacant and occupied' are ambiguous in the context of [his] landlord policy;" and (3) "[t]he record does not support summary judgment on the issues of bad faith breach of contract and punitive damages."[6] Doc. #55 at 5, 7, 8. Allstate replies that Williams

---

[5] It is unclear if Shawn was Williams' counsel at the time.

[6] Regarding Williams' summary judgment evidence, as to the documents he cites in footnotes 1, 2, 3, 5, 7, 9, 10, 11, 12, 13, 14, and 15 of his memorandum brief, he either did not include the complete document or all the pages cited. *See* Docs. #55, #55-1, #55-2, #55-3, #55-5, #55-7, #55-9, #55-10, #55-11, #55-12, #55-13, #55-14, #55-15.

5

"has not set forth evidence that the house was not vacant for the exclusionary period," still arguing alternatively that the bad faith claim should be dismissed. Doc. #62 at PageID 1176.

### A. Breach of Contract

"Insurance policies are contracts," *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013), and "are to be enforced according to their provisions," *Penn-Star Ins. Co. v. Thompson*, 368 So. 3d 1245, 1250 (Miss. 2023) (citation omitted). Under Mississippi law,[7] "a breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Liberty Mut. Ins. v. Miss. Transp. Comm'n*, 317 So. 3d 937, 947 (Miss. 2021) (cleaned up). There is no dispute that the Policy is valid and binding. Thus, the issue is whether Allstate's denial of Williams' fire claim amounts to a breach of the Policy.

The Policy excludes coverage for loss to the Property or personal property resulting from vandalism when the dwelling "has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism." Doc. #48-1 at PageID 693, 695, 697 (emphasis omitted). Williams does not argue that the fire resulted from some cause other than vandalism. *See generally* Doc. #55. So his breach of contract claim turns on whether the Property was vacant or unoccupied at the time of the fire.

### 1. Unoccupied or vacant

Allstate argues that "[t]he fact that [the Purnells] left clothes, trash, and other things behind did not make the house occupied as the term is used in the Allstate policy." Doc. #49 at PageID 1100. Williams responds that "[t]he definition of 'occupancy' or 'occupied' in home insurance

---

[7] Though not mentioned by either party, the Policy provides that "the laws of the state in which the residence premises is located shall govern any and all claims or disputes in any way related to this policy." Doc. #48-1 at PageID 691 (emphasis omitted).

6

contracts in Mississippi is not definitively established by any single authority" and "[t]he terms 'unoccupied' and 'vacant' are ambiguous in [the Policy]."[8] Doc. #55 at 5, 8. Without mentioning Williams' ambiguity argument, Allstate replies that "[t]he fact that each of the Purnell daughters admitted to leaving at least some personal items is insufficient to meet the legal definition of occupancy." Doc. #62 at PageID 1178.

"In interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Penn-Star Ins.*, 368 So. 3d at 1251 (cleaned up). "When the words of an insurance policy are plain and unambiguous, the Court will afford them their plain, ordinary meaning and will apply them as written." *Rylee v. Progressive Gulf Ins.*, 224 So. 3d 535, 537 (Miss. 2017). "An insurance contract is ambiguous when the policy can be interpreted as having two or more reasonable meanings." *Fid. & Guar. Ins. v. Blount*, 63 So. 3d 453, 461 (Miss. 2011). If an ambiguity exits, it must be resolved in favor of the insured, as the non-drafting party. *Cont'l Cas. Co. v. Allstate Prop. & Cas. Ins.*, 235 So. 3d 40, 50 (Miss 2017). "[A]mbiguities do not exist simply because two parties disagree over the interpretation of a policy." *Id.* (citations omitted).

The Policy does not define "unoccupied" or "vacant." *See generally* Doc. #48-1 at PageID 688–89. "Where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning. In determining the ordinary meaning, [the Mississippi Supreme Court] will often consult leading dictionaries."[9] *Anglin v. Gulf Guar. Life*

---

[8] Both Allstate and Williams use "vacant" and "occupied" interchangeably. *See generally* Docs. #49; #55; #62.

[9] *See, e.g.*, *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 455 (Miss. 2010) (using *Black's Law Dictionary* and *Random House Webster's Unabridged Dictionary* to define "disposed of"); *Pegram v. Bailey*, 708 So. 2d 1307, 1314 (Miss. 1997) (looking to *Random House Webster's Dictionary* to find common meaning of "correspond"); *Kerr-*

7

*Ins. Co.*, 956 So. 2d 853, 860 (Miss. 2007) (cleaned up). In Bryan A. Garner's *A Dictionary of Modern Legal Usage*,[10] "unoccupied" is defined as "without human occupants."[11] Bryan A. Garner, 907 (2d ed. 1995). Meriam-Webster defines "occupied"[12] as "to reside in as an owner or tenant." Meriam-Webster, https://www.merriam-webster.com/dictionary/occupied (last visited Jan. 31, 2024). Given the ordinary meaning of the relevant words in the Policy, the Policy is not ambiguous. *Rylee*, 224 So. 3d at 537; *see Ass'n of Trial Lawyers Assur. v. Tsai*, 879 So. 2d 1024, 1029 (Miss. 2004) ("A policy provision is ambiguous only if it is subject to more than one reasonable interpretation.").

Allstate's summary judgment evidence shows all the Purnell sisters moved out of the rental home more than 90 days prior to the fire. *See* Doc. #48-7 at 42; Doc. #48-8 at 12; Doc. #48-6 at PageID 26. Williams then must offer "significant evidence" showing otherwise to overcome summary judgment. *Johnson*, 597 F.3d at 676 (emphasis omitted).

### 2. Williams' summary judgment evidence

Williams argues summary judgment is not warranted because "Howard Dean saw [the Purnell daughters] in and out of the home the entire summer of 2019 leading up to the fire and in

---

*McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 17–20 (Miss. 1995) (upholding use of *Webster's Third New International Dictionary* to conclude the popular meaning of "raw material" did not include electricity).

[10] The Mississippi Supreme Court has used Garner's dictionary on prior occasions. *See, e.g.*, *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 613 (Miss. 2009) (citing *A Dictionary of Modern Legal Usage* to define "lose"); *Sumner v. City of Como Democratic Exec. Comm.*, 972 So. 2d 616, 619 n.5 (Miss. 2008) (using same to define "bond"); *Anderson v. State*, 185 So. 3d 966, 970 (Miss. 2015) (citing same to define "probative"); *In re Hooker*, 87 So. 3d 401, 423 n. 82 (Miss. 2012)(citing same to define "justiciable"). The Mississippi Court of Appeals has used it as well. *See, e.g.*, *Norris v. Cox*, 860 So. 2d 319, 322 (Miss. Ct. App. 2003) (using same for a definition of "agent").

[11] For "vacant; unoccupied," it states: "These words are often used in the context of insurance policies on buildings. They are not synonymous: *vacant* means without inanimate objects, while *unoccupied* means without human objects." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 907 (2d ed. 1995) (emphasis in original).

[12] There are other entries under Meriam-Webster's definition of "occupied." Meriam-Webster, https://www.merriam-webster.com/dictionary/occupied (last visited Jan. 31, 2024). The referenced definition specifically provides an example of "occup[ying] an apartment on a two-year lease." *Id.*

his opinion, they were still living there."[13] Doc. #55 at 6. Allstate replies that Dean's "testimony differs from what he told Allstate during the original investigation of the claim[,] [o]n September 19, 2019, less than three weeks after the fire"—specifically, that he "believed the Purnell's [sic] had moved out about six (6) months prior to the fire."[14] Doc. #62 at PageID 1174.

"To satisfy its burden, the party opposing summary judgment is required to *identify specific evidence* in the record, and to articulate the precise manner in which that evidence supports their claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (cleaned up) (emphasis added). In the argument section of his memorandum brief, Williams does not cite any evidence to support his argument that the Property was occupied, whether based on Dean's account or anything else. *See* Doc. #55 at 6–7.[15] In the facts section of his memorandum brief, Williams cites Dean's deposition at pages 15 through 23. Doc. #55 at 2 n.2; *id*. at 4 n.14. But Williams did not include those pages as part of his summary judgment evidence. Doc. #55-2.[16] Accordingly, Williams has not "articulate[d] the precise manner" in which the evidence supports his claim. *Willis*, 749 F.3d

---

[13] Though Williams also argues that he "did not request that his tenants move until after May 2019" and that "[b]ased on what he personally saw, the Purnell daughters were still living in the home in the summer of 2019," Doc. #55 at 6, such arguments are not supported by any evidence and therefore are not considered by the Court. Regardless, Allstate, citing the transcript of Williams' examination under oath, points out that Williams "admitted that he had not even been inside the house during the entirety of 2019." Doc. #62 at PageID 1177 (citing Doc. #48-5 at 21). Williams further argues that "[t]he policy required that the property be unoccupied for 90 consecutive days," Doc. #55 at 6, however, he does not identify which specific days, if any, the home was purportedly occupied.

[14] In support of this argument, Allstate cites a "Claim Note" attached to its motion as an exhibit. Doc. #62 at PageID 1174 n.2. The "Claim Note" appears to be a printout or screenshot of computer entries. Doc. #62-1. There is nothing in the record submitted by Allstate to authenticate the document or explain how and why its contents came to be. However, Williams does not object to the document serving as summary judgment evidence.

[15] Williams does not even cite the single page of Dean's deposition transcript he attached as an exhibit to his response. *See* Doc. #55-2; *see generally* Doc. #55.

[16] Williams also appears to stretch or ignore some of his summary judgment evidence. For example, his facts section cites Documents #55-3 through #55-5 in support of his statements that "the[ Purnells] never returned the key. Utilities were on at the home until the date of the fire. The utilities were not paid for by Williams but were paid by Maria Purnell and her daughter Erika Purnell." Doc. #55 at 5 (footnotes omitted). However, those documents reflect that Erika said she "misplaced" her key and her sisters did not have keys because they were younger, Doc. #55-3; and she paid the light bill but does not say she was paying it at the time of the fire, Doc. #55-5. Notably, the utility bill in the record has Williams' name on it. Doc. #55-4. And Erika clearly said she moved out in 2018. Doc. #55-3.

at 318 n.3 (citation and quotation marks omitted). Even if Williams had attached Dean's complete deposition transcript as his evidence, "[i]t is well settled that the court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment." *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 586–87 (N.D. Tex. 2012) (citation omitted). So Williams has not shown "significant evidence demonstrating the existence of a genuine fact issue." *Johnson*, 597 F.3d at 676 (cleaned up); *see Willis*, 749 F.3d at 317; *Petrie*, 904 F. Supp. 2d at 586–87.[17] Summary judgment is properly granted on the breach of contract claim.

### B. Bad Faith

Just like his breach of contract claim, Williams' claim for bad faith breach of contract is premised on Allstate's denial of coverage under the Policy.

"In order to prevail on a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful [sic] or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Estate of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459, 464 (Miss. 2021) (citations omitted). "Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract." *Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511, 516 (S.D. Miss. 1987) (citing *Aitken v. State Farm Mut. Auto. Insur. Co.*, 404 So. 2d 1040, 1045 (Miss. 1981)). "Where there is no breach of contract, there can be no tortious breach

---

[17] The part of Dean's deposition that Williams did place in the summary judgment record is insufficient to meet his summary judgment burden. It reflects that Dean said the Purnell girls "were living there before the fire started or during the time, *if you ask me*"—but then followed that with "*if I remember correctly*." Doc. #62-2 at 25 (emphases added). "Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence." *Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F. Supp. 2d 668, 674 (S.D. Tex. 2002). As Allstate points out, Dean previously told it that "he estimated they moved out about … 6 months ago." Doc. #62 at PageID 1174; *see* Doc. #62-1 at PageID 1183.

10

of contract." *Birdsong v. Lincoln Nat. Life Ins. Co.*, No. 3:10-cv-699, 2012 WL 5026437, at *6 (S.D. Miss. Oct. 17, 2012) (citation omitted).

As explained above, Williams' breach of contract claim cannot be sustained because Allstate had reason to deny coverage under the Policy. Consequently, Williams' bad faith claim premised on the denial of coverage cannot be sustained either. *See King v. Freedom Life Ins. Co. of Am.*, No. 2:10-cv-14, 2011 WL 3876979, at *5 (S.D. Miss. Aug. 31, 2011) (granting summary judgment on the plaintiff's claims against her insurer for breach of contract, bad faith, and breach of the duty of good faith and fair dealing after finding the policy excluded coverage). Summary judgment is warranted on Williams' bad faith claim too.

## V
## Conclusion

Allstate's motion for summary judgment [48] is **GRANTED**. A separate judgment will issue.

**SO ORDERED**, this 2nd day of February, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

11